**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SYDON A. JOHNS,

Plaintiff,

- v -

Civ. No. 9:09-CV-1016 (NAM/RFT)

GOORD, *Commissioner of DOCS*; BRIAN FISCHER, *Commissioner of DOCS*; LESTER WRIGHT, *Deputy Commissioner of DOCS*; RIVERA, *Superintendent, Coxsackie Correctional Facility*; LAPE, *Superintendent, Coxsackie Correctional Facility*; MONTUSCELLO, *Deputy Superintendent, Coxsackie Correctional Facility*; JOAN SMITH, *Deputy Superintendent, Coxsackie Correctional Facility*; R.N. JANE DOE; DR. MILLER; C.O. JOHN DOE,

Defendants.

**APPEARANCES:** **OF COUNSEL:**

SYDON A. JOHNS
Plaintiff, *Pro se*
04-A-3393
Mt. McGregor Correctional Facility
1000 Mt. McGregor Road
Wilton, NY 12831

HON. ANDREW M. CUOMO
Attorney General for the State of New York
Attorney for Defendants
The Capitol
Albany, NY 12224

CHRISTINIA L. ROBERTS-RYBA, ESQ.
Assistant Attorney General

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

*Pro se* Plaintiff Sydon A. Johns filed this civil rights Complaint, pursuant to 42 U.S.C. § 1983, alleging that his First, Eighth, and Fourteenth Amendment constitutional rights were violated when his medically prescribed eyeglasses were taken from him and he was retaliated against. Dkt.

No. 1, Compl. Presently before the Court is Defendants' Motion to Dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(6). Dkt. No. 26. Plaintiff filed a Response in Opposition to the Motion conjoined with a Cross-Motion to Amend his Complaint. Dkt. No. 28. Plaintiff did not include a proposed amended complaint along with his Cross-Motion to Amend, nor has he indicated the subject matter of the allegations he seeks to add. However, Plaintiff amplified his factual allegations against Defendants in the body of his Response. *Id.* at p 7. It is not clear whether Plaintiff seeks to amend his Complaint in order to add those new details, or if he seeks leave to amend in order to add allegations that have not yet been proffered. In any event, because Plaintiff is proceeding *pro se*, we shall consider the additional factual allegations included in his Response as we address Defendants' Motion.

Plaintiff also requests that Defendants be ordered to identify Defendants R.N. Jane Doe and C.O. John Doe so that he can properly serve them. *Id.* at pp. 7-8. Defendants filed a Reply to Plaintiff's Response and Cross-Motion to Amend. Dkt. No. 29. For the reasons that follow, it is recommended that Defendants' Motion to Dismiss be **granted** and Plaintiff's Cross-Motion to Amend be **denied.**

## I. BACKGROUND

In accordance with the applicable standard for deciding a motion to dismiss under FED. R. CIV. P. 12(b)(6), we assume the factual allegations raised in Plaintiff's Complaint and Response to be true for the purposes of addressing Defendants' Motion. *See infra* Part II.A.

On September 11, 2006, prior to Plaintiff's visit for medical care in Albany, New York, Defendant C.O. John Doe took Plaintiff's eyeglasses from him pursuant to a standing policy at Coxsackie Correctional Facility that precludes inmates from taking eyeglasses with them on outside

hospital trips. Compl. at ¶¶ 5-6. Plaintiff advised prison officials that he suffered from a disease known as "dry eyes," which makes exposure to natural light very painful and has the potential to cause permanent blindness. Pl.'s Resp. at p. 5. Notwithstanding Plaintiff's pleadings, prison officials demanded his glasses, at which point Plaintiff demanded to speak with a supervisor and, after the officials refused, Plaintiff let it be known that he would pursue administrative remedies against said officials. *Id.* Plaintiff asserts that in response to his statements, Defendants destroyed his eyeglasses, which were never found upon his return from the outside medical consultation. *Id.* As a result of such confiscation, Plaintiff suffered "extreme pain [] in [his] eyes and excruciating headache[s] which continue[] up until this very day." Compl. at ¶ 6.

On November 1, 2006, and on several occasions thereafter, Plaintiff complained to R.N. Jane Doe and Defendant Dr. Miller about his situation, asking for temporary glasses to be provided until the original pair could be replaced. *Id.* at ¶ 7. Plaintiff was informed that he would have to pay for replacement eyeglasses even though they were taken from him by C.O. John Doe and never returned. *Id.* Plaintiff asserts that because of his constant complaints regarding the replacement of his glasses, Defendants conspired to retaliate against him by not providing his original glasses nor replacement glasses. *Id.* at ¶¶ 9-10.

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphasis added).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1949. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950-51.

**B. Eighth Amendment Claims**

Plaintiff asserts that the confiscation of his eyeglasses and the resultant pain he suffered constitutes a violation of the Eighth Amendment's ban on cruel and unusual punishment. To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway I*, 37 F.3d 63, 66 (2d Cir. 1994)). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the

existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

In this case, Plaintiff alleges to suffer from "dry eyes," which he asserts is a degenerative disease that causes him extreme pain when his eyes are exposed to natural light and which can lead to blindness. Pl.'s Resp. at p. 5. Defendants assert that Plaintiff's Eighth Amendment claim must fail because "dry eyes" is not a serious medical condition and therefore does not pass muster under the objective prong of the deliberate indifference standard. Dkt. No. 26, Defs.' Mot. to Dismiss at pp. 2-5; Dkt. No. 29, Defs.' Reply at p. 1. We agree.

In *Koehl v. Dalsheim*, 85 F.3d 86 (2d Cir. 1996), the Second Circuit reversed the district court's decision granting summary judgment against a prisoner who was denied medical care and

deprived of his medically prescribed eyeglasses. In that case, the prisoner's eyeglasses were needed to correct "*serious* vision problems," including "severe double vision and loss of depth perception," the deprivation of which rendered his left eye sightless. *Koehl*, 85 F.3d at 87. In finding that a question of fact existed as to whether Koehl's medical condition was sufficiently serious under the Eighth Amendment, the Second Circuit noted that his ability to function without the eyeglasses was impaired and that he alleged to have suffered injuries from walking into objects and falling. *Id.* at 88.

By contrast, Plaintiff does not allege that he has been physically limited or otherwise seriously harmed as a consequence of not having his prescription eyeglasses. Moreover, Plaintiff focuses in his Complaint and Response on the alleged deleterious effects of natural light on his dry eyes, but he makes no assertion that since his medical excursion on September 11, 2006, he has been forcibly exposed to natural light on a frequent basis. Nor does Plaintiff allege that he was personally in danger of becoming blind or that he was unable to carry on with his normal day-to-day activities as a result of not having his prescription glasses. Significantly, Plaintiff does not contend that he did not receive medical treatment for his condition, nor that such condition deteriorated due to a lack of treatment. For all of theses reasons, this case is distinguishable from *Koehl*.

Moreover, we find that "dry eyes" is simply not the type of medical condition that is deserving of constitutional protection under the Eighth Amendment. *See Hayes v. New York State Dep't of Corr. Officers*, 1998 WL 901730, at *8 (S.D.N.Y. Dec. 28, 1998) (finding that prisoner's allegation that the confiscation of his prescribed eyeglasses cause him pain, tearing, and declining vision, did not satisfy the objective prong of the Eighth Amendment); *see also Davidson v. Scully*, 155 F. Supp. 2d 77, 89 (S.D.N.Y. 2001) ("Plaintiff's blurry vision, headaches, and tearing are not

conditions that produce degeneration or extreme pain and are not a sufficiently serious condition under the Eighth Amendment."); *but see Myrie v. Calvo/Calvoba*, 591 F. Supp. 2d 620, 627 (S.D.N.Y. 2008) (denying motion to dismiss when prisoner alleged that his lack of eyeglasses for two months caused him vision deterioration, headaches, and eyestrain).

Because we find Plaintiff's alleged medical condition is not sufficiently serious under the objective prong of the Eighth Amendment standard, we need not address whether any of the Defendants were deliberately indifferent to his medical needs under the subjective prong of that standard. For the above reasons, we recommend Plaintiff's Eighth Amendment claim be **dismissed**.

**C. Retaliation**

Plaintiff alleges that Defendants conspired to retaliate against him for his complaints about the confiscation of his glasses by refusing to return the glasses. Compl. at ¶ 9; Pl.'s Resp. at pp. 5-6. The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove that (1) he engaged in constitutionally protected conduct; (2) prison officials took an adverse action against him; and (3) a causal connection exists between the protected speech and the adverse action. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted); *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).

In this case, Plaintiff's retaliation claim is wholly conclusory and incongruous. He claims that Defendant John Doe confiscated his glasses on September 11, 2006. Compl. at ¶¶ 5-6. Nearly two months later, on November 1, 2006 and on dates thereafter, Plaintiff complained to Defendants R.N. Jane Doe and Dr. Miller about the situation and requested temporary glasses, but to no avail. *Id.* at ¶ 7. Plaintiff does not indicate how Defendants John Doe, Jane Doe, and Dr. Miller were connected, nor does he indicate how Jane Doe or Dr. Miller could have produced his glasses given that John Doe was the one who initially took them. Also, Plaintiff's allegation that he did not complain to Defendants Jane Doe and Dr. Miller until nearly two months after John Doe confiscated his eyeglasses significantly weakens any claim of a causal connection between their alleged refusal to produce his glasses and his verbal complaints.

Plaintiff alleges in his Response to Defendants' Motion that his intention to pursue administrative remedies was known and thereby motivated Defendants to collectively withhold and/or destroy his prescribed eyeglasses. Pl.'s Resp. at p. 5. However, Plaintiff does not allege that he in fact pursued administrative remedies against the named Defendants.

In sum, Plaintiff's retaliation claim is lacking the factual allegations necessary to pass the facially plausible standard. The Second Circuit has stated that a claim asserting retaliation in "wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d at 13. Therefore, it is recommended that this claim be **dismissed**.

**D. Fourteenth Amendment Claim**

Plaintiff alleges that his Fourteenth Amendment rights were violated, but does not provide any specific allegation as to that claim. To the extent Plaintiff asserts that his eyeglasses were stolen or improperly confiscated, a claim for deprivation of property does not lie in federal court if the state

courts provide an adequate remedy for the deprivation of that property. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (cited in *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006)). New York provides a remedy in section nine of the New York Court of Claims Act, which permits an inmate to pursue a claim for deprivation of property against the State of New York in the New York Court of Claims. *Bridgewater v. Taylor*, 2010 WL 996154, at *6 (S.D.N.Y. Mar. 8, 2010) (citations omitted). Because New York State provides an adequate post-deprivation remedy for destruction of property, Plaintiff may not pursue this claim as a § 1983 action in this Court. Therefore it is recommended that this claim be **dismissed**.

**E. Personal Involvement**

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009).

Nevertheless, if a plaintiff seeks to bring a § 1983 action for supervisory liability, liability on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were

occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d at 873) (further citations omitted).

Plaintiff brings claims against Defendants Goord, Fischer, Wright, Rivera, Lape Montuscello, and Smith, all of whom occupy supervisory positions in DOCS. Plaintiff does not allege any direct participation on the part of any of these Defendants with respect to the constitutional claims brought. Nor does he allege that such Defendants were put on notice of his situation and failed to provide a remedy. As such, the Court presumes that Plaintiff seeks to hold these Defendants liable under a theory of *respondeat superior*. For the reasons stated above, such a claim must fail. In any event, because we find no underlying constitutional violations have been adequately pled, there can be no supervisory liability based on those alleged violations. *See Blyden v. Mancusi,* 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation.")

For the above reasons, it is recommended that Plaintiff's supervisory liability claims also be **dismissed**.

### F. Unserved Defendants

Under Federal Rule of Civil Procedure 4(c)(1), a plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, a plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m).[1] Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that

[1] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y.L.R. 4.1(b).

defendant. *Id*.

In this case, there is no indication that the Defendants R.N. Jane Doe and C.O. John Doe were properly served. Although the courts must afford plaintiffs notice before they may dismiss a claim for failure to serve a defendant, FED. R. CIV. P. 4(m), in this case, because Plaintiff's claims lack merit, granting Plaintiff the opportunity to identify and properly serve these unnamed Defendants would be futile. Thus, it is recommended that Plaintiff's claims against R.N. Jane Doe and C.O. John Doe be **dismissed**.

**III. Plaintiff's Cross-Motion to Amend**

As previously discussed, it is unclear whether the additional allegations brought forth in Plaintiff's Response to Defendants' Motion constitute the entirety of the amendments he seeks to add to the Complaint, or alternatively, if Plaintiff seeks leave to add further amendments to his Complaint that have thus far not been proffered. In any event, Plaintiff's Motion to Amend should be **denied** on both formal and substantive grounds. As to the form, pursuant to the Local Rules for the Northern District of New York, a motion to amend must be accompanied by an affidavit and an unsigned copy of the proposed amended complaint. N.D.N.Y.L.R. 7.1(a)(2)-(4)). Plaintiff attached neither document to his Cross-Motion to Amend. *See* Dkt. No. 28. Substantively, as discussed above, the allegations presently before the Court are facially insufficient to maintain causes of action under § 1983. Therefore, allowing Plaintiff leave to include the additional factual allegations brought in his Response to Defendants Motion would be an exercise in futility. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

Therefore, it is recommended that Plaintiff's Cross-Motion to Amend be **denied**.

**IV. CONCLUSION**

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 26) be **GRANTED**; and it is further;

**RECOMMENDED**, that Plaintiff's Cross-Motion to Amend (Dkt. No. 28) be **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date: August 6, 2010
Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge